In re L. H. KEMMERER & CO.

(District Court, E. D. Pennsylvania. May 13, 1913.)

No. 4,377.

BAILMENT (§ 18*)—LIEN—STATUTES—CONSTRUCTION—"MANUFACTURE."

Act Pa. May 23, 1907 (P. L. 228), entitled "An act concerning liens of manufacturers and throwsters of cotton, woolen, and silk goods," provides that all persons or corporations engaged in manufacturing,. spinning, or throwing cotton, wool, or silk into yarn or other goods, shall have a lien on the goods and property of others, which may come into their possession to be manufactured, spun, or thrown into yarn or other goods, for the amount of any account that may be due them, from the owners of such material, by reason of any work or labor performed or materials furnished in or about the manufacturing, spinning, or throwing of the° same or other goods of such owner or owners. *Held*, since the act changes the common law—that a bailee's lien for work or materials can only be enforced on the particular goods benefited—the .act should be strictly construed, and the term "manufacture" be limited to producing yarn or similar goods from raw material; and hence the section did not confer a lien on a silk dyeing company for a general balance of account on raw material of the bankrupt in the hands of such company for treatment.

[Ed. Note.—For other cases, see Bailment, Cent. Dig. §§ 77–79, 81–84; Dec. Dig. § 18.*

For other definitions, see Words and Phrases, vol. 5, pp. 4344–4346; vol. 8, p. 7716.]

In Bankruptcy. In the matter of bankruptcy proceedings of L. H. Kemmerer & Co. On claim of the National Silk Dyeing Company for a lien on certain silk raw material for general balance of account. On certificate of a referee for review of his order denying a lien. Affirmed.

Reuben J. Butz, of Allentown, Pa., for claimant.

James L. Schaadt and George W. Aubrey, both of Allentown, Pa., for trustee.

J. B. McPHERSON, Circuit Judge. This controversy arises out of the following undisputed facts:

The National Silk Dyeing Company carries on the business of dyeing and weighting silk skeins and silk piece goods, and operates a plant in Allentown, Pa. In February and March, 1912, the bankrupts delivered to the company certain quantities of Japan two-thread organzine, and of Japan four-thread tram, to be dyed and weighted according to direction; but nothing has ever been done upon the order, and the goods are still in the company's hands. On April 10, 1912, when the bankruptcy proceeding was begun, the bankrupts owed the company $1,461.49, with interest, "for work and labor performed and materials furnished in and about the dyeing and weighting of

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

certain other raw silk skeins of said bankrupts." For this sum the company asserted a lien, and sought to enforce it against the goods delivered in February and March, upon which no work had been done. The referee (John G. Diefenderfer, Esq.) denied the company's petition.

Whether the lien is valid depends upon the meaning of the Pennsylvania act of May 23, 1907 (P. L. 228):

"An act concerning liens of manufacturers and throwsters of cotton, woolen, and silk goods.

"Section 1. Be it enacted, etc., that all persons or corporations, engaged in the business of manufacturing, spinning, or throwing cotton, wool, or silk into yarn or other goods, shall be entitled to a lien upon the goods and property of others, that may come into their possession for the purpose of being so manufactured, spun, or thrown into yarn or other goods, for the amount of any account that may be due them, or any note or notes taken on account of such account, from the owners of such cotton, wool, or silk, by reason of any work and labor performed and materials furnished in or about the manufacturing, spinning, or throwing of the same or other goods of such owner or owners."

It is a matter of regret that no Pennsylvania court has been called upon to construe this statute, so that the present case is one of first impression; but under such circumstances a federal court is bound to consider the legislation, and I have no desire to evade the duty. It is hardly necessary to say that the act is badly drawn, for if its meaning were plain this dispute would probably not be here. The question to be answered is this: Are dyers entitled to the special privilege given by the statute? A familiar rule requires the act to be strictly construed; it changes a long-established doctrine of the common law —that a bailee's lien for work or materials can only be enforced against the particular goods benefited thereby—and extends the scope of the lien so as to charge the goods, not only for benefits done to themselves, but also for benefits done previously to other goods of the bailor, thus enlarging a particular lien into a general lien. Moreover, an additional reason for strict construction is found in the fact that the statute is special, its purpose is to advantage only one class of bailees, namely, certain persons, many or few, who may be engaged in the manufacture of cotton, woolen, and silk goods. What, then, is the reasonable construction of the act? How large did the Legislature intend this specially benefited class to be, and particularly did it mean to include dyers as well as throwsters and spinners? If the Legislature had intended to give the privilege of a general lien to every process of "manufacture" that affects the three classes of goods named, I think it would have used that generic word only; for it would have found insurmountable difficulty in enumerating every variety of process that is embraced in the manufacture of the infinitely diversified articles known as "goods," and goods, moreover, that are produced from raw materials in such universal demand as "cotton, wool, or silk." If the word "manufacture" alone had been used, dyers could hardly be excluded. Com. v. Quaker City Dye Works, 5 Pa. Co. Ct. R. 94. But the word is not used alone, for even in the title of the act —which is a part of the statute under the Pennsylvania Constitution, and may properly be examined as an aid to construction—"throw-

sters" (i. e., twisters) are immediately specified. Why was this word added? "Throwsters" has no apparent function, unless it limits "manufacturers"; to say "manufacturers *and* throwsters" is very much like saying "Pennsylvanians *and* Philadelphians." In each phrase the second noun is included in the first, and in each the second may be (and not improbably is) inserted for the purpose of calling particular attention to the smaller class. It appears to be an awkward way of saying "a manufacturer who is a throwster," or "a Pennsylvanian who is a Philadelphian."

And in this effort to give some effect to all the words of the act, further support is found in the section quoted; for as he went on with his task the draftsman seems to have remembered that "throwing" was a word more generally applied in the fabrication of silk, while "spinning" was ordinarily used in speaking of cotton or wool. So he added "spinning," and we now have three words, instead of two—"manufacturing, spinning, or throwing"—the last two being superfluous, unless they are intended to limit the generality of the first. It seems probable that they were so intended, for the draftsman immediately proceeds to speak of certain products of manufacture, and apparently what he has in mind is the products that are made by spinners and by throwsters only, and not the products of other manufacturers—namely, "yarn or other goods." No doubt "other goods," standing alone, is a wide phrase indeed; but, taking the context into account, I think it must mean "yarn or other goods similar to yarn" —e. g., silk threads—for these are the particular goods with which spinners and throwsters are immediately concerned, and it is impossible to suppose that every kind of "goods" was intended. Still further: The section seems to be consciously dealing with the kind of business whose immediate object is to produce yarn or other similar goods, for it speaks of manufacturing, spinning, or throwing "cotton, wool or silk" (evidently this is the raw material) *into* yarn or other goods; and this idea—that "yarn or other goods" is the immediate result of the particular process—indicates again with a good deal of force that the process contemplated is spinning or throwing.

I repeat that the act is awkwardly drawn, and that certainty as to its meaning can hardly be reached; but for the reasons just outlined I believe that its purpose was to confine the special privilege thus created to the business of spinning or throwing cotton, wool, or silk into yarn or other similar goods, and that the business of dyeing is not included in the statute.

The referee's order of October 29, 1912, is affirmed.